HERNÁNDEZ, PLAINTIFF, APPELLANT AND APPELLEE, *v.* LOUBRIEL, DEFENDANT, APPELLANT AND APPELLEE.

APPEAL from the District Court of San Juan, Section 1, in an Action of Ejectment and for Damages.

No. 1239.—Decided July 30, 1915.

EJECTMENT—DAMAGES—EVIDENCE.—Having examined the evidence introduced in this case, consisting of plans, deeds and the testimony of expert and other witnesses, it was held that the evidence was contradictory as to the property in question; that, as found by the trial court, the damages were not sufficiently proven, and that as it was not shown that the trial court was influenced by passion, prejudice or partiality or committed any manifest error, its judgment should be affirmed.

The facts are stated in the opinion.

*Mr. José E. Benedicto* for the plaintiff.

*Mr. Enrique Lefebre* for the defendant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action to recover a strip of land and an indemnity for damages.

The pertinent part of the complaint reads as follows:

"2. That the plaintiff is the owner of the following property:

"'URBAN.—A lot situated in the ward of Puerta de Tierra of this city, marked No. 87 and bounded on the north for 22 meters by lot No. 86 belonging to Angela Ayuso, Dolores Ramos and the Succession of Iglesias; on the south for 22 meters by San Agustín Street; on the east for 25 meters by government lands; on the west for 25 meters by a former part of said lot No. 87 which belonged to Irene Nogueras and now belongs to Rafael Loubriel Cueto. · It is rectangular in shape and contains 550 square meters.'

"3. That he acquired the lot described by purchase from Julio César González and his wife, Carmen Daubon, on November 17, 1911, according to a public deed which is duly recorded in the registry of property.

"4. That until about seven months ago the plaintiff and the former owners of the property described had held the same as owners quietly, publicly, peacefully and uninterruptedly for more than thirty years.

"5. That defendant Rafael Loubriel Cueto is also the owner of a

lot in the ward of Puerta de Tierra of this city situated west of the lot of the plaintiff and bounding it on that side.

"6. That more than twenty years ago there was a fence on the division line of the two lots, but it has been destroyed by time and there exists at present only the vestiges of the same which indicate the true boundary or division line between the two lots.

"7. That against the wish and without the authority of the plaintiff the defendant put up a fence within the lot of the plaintiff at a distance of 1.30 meters from the line on which the old fence stood, separating from the property of the plaintiff a strip of land situated on the western boundary of the same measuring 1.30 meters in width by 25 meters in length and lying between the property of the defendant and the remainder of the lot of the plaintiff, which strip of land, for greater clearness, is described as follows:

"'A strip of land in the ward of Puerta de Tierra of this city 1.30 meters in width by 25 meters long and bounded on the south by San Agustín Street; on the north by lot No. 86 of Angela Ayuso; on the east by lands of Guillermo Hernández; on the west by the lot of defendant Rafael Loubriel Cueto.'

"8. That since about seven months ago when the defendant put up the said fence he has been in possession of the said strip of land without any title thereto and against the wish of the plaintiff, whom he refuses to recognize as the sole and lawful owner thereof.

"9. That the plaintiff began to build a dwelling-house on the said lot, but was forced to suspend the said work by the defendant who considers himself the owner of the said strip of land.

"10. That the suspension of the said work has caused the plaintiff damages in the loss of materials, the destruction or loss of the work already done, delay in completing the building and loss of the rent of said house during the time the work was suspended.

"11. That the plaintiff estimates the damages caused him by the defendant for the foregoing causes at $800.

"12. That the defendant knew perfectly well that the plaintiff was the sole owner of the said strip of land, for from the moment he claimed to have some right therein the plaintiff, with the knowledge of the defendant, secured a surveyor to make a survey of his lot from which it resulted that the said strip of land belonged to the plaintiff, and although the defendant was thoroughly cognizant of the result of the said survey he acted as stated."

The defendant answered as follows:

"1. He admits allegations 1, 2, 3 and 5 of the complaint.

"2. He denies allegation 4 in so far as it refers to plaintiff's having been disturbed in his possession by the defendant.

"3. He denies allegations 6, 7 and 8.

"4. As to allegations 9, 10, 11 and 12, the defendant alleges that the construction work referred to by the plaintiff as having been suspended was that part of the work which he was undertaking on the lot belonging to the defendant, and that it was not suspended by the defendant but by an order of the court which referred only to what the plaintiff was doing on the property of the defendant."

As new matter of defense the defendant alleged, in synopsis, that on March 28, 1910, he acquired by purchase from his grandfather, José Reyes Rivera, the following property:

"URBAN.—A lot situated in the ward of Puerta de Tierra of this city measuring 14 meters in front by 29 meters deep; bounded on the north by land of Irene Nogueras; on the south by San Agustín Street; on the east by the lot of Guillermo Hernández, the plaintiff; on the west by the property of Belén Dávila de Rengel."

That the boundary lines of his lot have been marked from the time he purchased the same and the defendant has never moved the fence which separates his lot from that of the plaintiff.

That for more than thirty years the fence between the two lots has been in the same place in which it is at present and that about seven years ago a house was built on the plaintiff's lot the steps of which occupy a portion of the strip claimed by the plaintiff.

That because of the existence of the fence the plaintiff's action of ejectment has prescribed.

The case went to trial and the court rendered judgment sustaining the complaint as to the recovery of the land but dismissing the same as to the claim for damages. Both parties appealed to this court.

We will consider first the appeal of the defendant, which involves the fundamental question of ejectment, and then the appeal of the plaintiff, which refers to the matter of damages only.

The evidence of both parties consisted of documents, plans and testimony of experts and other witnesses. Besides, the trial judge made an ocular inspection of the place where the lots of the plaintiff and defendant are situated.

Weighing the said evidence, the trial judge, in the opinion on which he based his judgment, said:

"After carefully considering the evidence introduced and viewing the place where the lots are situated, there is no doubt that the eastern boundary of the defendant's lot is within the lot which belongs to the plaintiff, but the reason for this is that the house situated in the southwestern angle of the plan of the Department of the Interior and forming the corner of San Agustín and San Juan Bautista Streets does not occupy its true position but is built 1.30 meters to the east of the exact southwest point marked on the said plan of the Department of the Interior; and taking the corner of the house built in the southwestern angle of the said plan of the Department of the Interior as a starting point for the measurement of the whole southern boundary of the lots fronting on San Agustín Street, it is obvious that the defendant's lot is short 1.30 meters and he claims that this is to be found in the plaintiff's lot. However, the southwestern angle of the house built on the corner of San Agustin and San Juan Bautista Streets is not where the lineal measurement of all the lots fronting on San Agustín Street should begin, but it should begin at the point indicated in the plan of the Department of the Interior, or the southwestern angle of the lot marked No. 81 on the said plan, when no difference will result among the measurements shown by the deeds of the owners of the lots bounded by San Agustín Street."

We have carefully considered the evidence also and find three distinct elements by which the problem submitted may be solved; namely, (1) the plans and the testimony of the experts; (2) the deeds, and (3) the testimony of the witnesses.

Let us consider the plans and the testimony of the experts. Both the lot of the plaintiff and the lot of the defendant belonged to the Government and are situated in the extramural ward of Puerta de Tierra between the second and third lines of defense of the fortifications of San Juan. About the year

1879 a plan of the said ward was made, a copy of which, furnished by the Department of the Interior, was introduced in evidence and is now before us. The lot belonging to the plaintiff is a part of the lot marked 87 on the said plan and occupies the eastern corner fronting south. The lot of the defendant was formed of a part of lot No. 87, of the adjoining lot No. 85, also fronting on San Agustín Street, and of a part of other lots fronting on the central highway. According to this plan, as explained by the experts, it is obvious that instead of a lot 10 meters in front by 25 meters deep which was sold by the owner of lot No. 87 to the defendant's predecessor, the defendant has at present a lot 11.30 meters in front by 25 meters deep. The foregoing conclusion is also borne out by an examination of the other plans introduced in evidence.

Let us examine the deeds. Those of the plaintiff show that he has a lot 22 meters in front by 25 meters deep. This is not in conformity with the actual fact. Starting from the fence which divides the lot of the plaintiff from that of the defendant as it was found at the beginning of this action, the plaintiff has 1.30 meters less than what his deeds call for. According to defendant's deeds, his lot measures 14 meters in front by 29 meters deep. This is in harmony with the facts. Starting from the fence which now separates the two lots, the defendant has only what his deeds call for. Where, then, is the missing 1.30 meters? Returning to the plans and the expert evidence, the answer is that the said difference lies in the western part of the square of which the lots of the plaintiff and defendant form a part. Let us see what Surveyor Enrique Castro González says with regard to the survey which he made at the request of the plaintiff and by authority of the court:

"Having before him the deeds of both owners and also the plan of the lands prepared by the Spanish Government for the sale of said lots to private individuals, he ascertained that in order to locate precisely the dividing line between the lot of Hernández and that

of Loubriel it was necessary to begin the measurement at the corner of the square to the west of the said lots, which he did in the following manner:

"This square is composed of lots No. 81, 83, 85 and 87. No. 87 (should be 81) forms the western corner and fronts on San Agustín Street for 20 meters. Nos. 83 and 85 measure 30 meters each and No. 87 measures 32 meters, so that the sum total of the length of the four lots on San Agustín Street is 112 meters. As the lot belonging to Hernández has a front of 22 meters on that street and forms the eastern part of lot No. 87, which is the last, the line dividing this lot from that of Loubriel should be found at a distance of 90 meters from the western corner.

"The starting point at the corner is perfectly defined, for this lot No. 81 is enclosed on the side of the street which runs from north to south by a masonry wall and having verified its position with relation to the extension of that street on the north of the highway, it was found to be in perfect alignment therewith.

"From this point at the corner of the square the distance to the fence which now divides the lot of Hernández from that of Loubriel was found to be 91.30, and as it ought to be 90 meters it follows that Loubriel is in possession of a strip of land 1.30 meters wide of the lot belonging to Hernández.

"Placing the transit at this point a line was run at right angles with the front line of the lot in order to trace its depth, measuring 25 meters, and it was observed that the fence encroached upon the property belonging to Hernández along its entire length, the strip thus encroached upon being 1.30 meters wide by 25 meters deep.

"The points indicating the true division line between the two lots are marked on the land.

"A fact which proved the correctness of the method adopted' is that when the transit was placed at the southeastern angle of the lot belonging to Hernández where it abuts the land of The People of Porto Rico, in order to determine the eastern boundary of the said lot, the line ran at a distance of 15 centimeters to the west of the eastern side of lot No. 86 which is the lot situated on the north."

Let us examine the testimony of the witnesses. It is wholly contradictory. If we believe those for the plaintiff we must conclude that there existed an old fence which gave to the plaintiff's lot the exact dimensions stated in the deeds and plans, of which fence there are still vestiges remaining;

that not only did the fence exist but that alongside of it and within the strip of land 1.30 meters wide, which is claimed, an outhouse belonging to the plaintiff was built and later destroyed, and that at a time which was not exactly fixed but which can be safely said not to have been prior to 1894, the defendant moved the fence from where it was to a distance of 1.30 meters within the lot of the plaintiff.

On the other hand, if we give credence to the witnesses for the defendant we should have to conclude that he did not move the fence; that the fence always stood where it now stands and therefore that the defendant and his predecessors had held possession of the lot which they now hold for a period of time sufficient perhaps to give them the right of acquisition by prescription.

Evidently somebody was not telling the truth. The testimony of the witnesses for the plaintiff and that of those for the defendant as to the matter of the fence cannot both be true. Therefore, there was a real conflict which was adjusted by the district judge in favor of the plaintiff.

It has been said that the trial judge did not give the proper attention to the question of possession in this case. We have read his opinion carefully and although it really seems that he considered the plan of urbanization according to which the lots were sold by the original owner, the State, as perhaps decisive of the controversy before him, it cannot be held that he did not take into consideration the testimony of the witnesses.

This is a case which undoubtedly creates some perplexity, but it must be decided and in the condition in which it comes before us and in view of all the attendant circumstances, the weight given to the evidence by the judge who tried the case originally and personally heard the witnesses testify and viewed the place where the strip of land in controversy is situated must prevail with us.

It has not been shown that the judge of the district court was actuated by passion, prejudice, or partiality or that he

committed any manifest error, and the judgment appealed from as to the action of ejectment should be affirmed.

Likewise, we are of the opinion that the judgment as to the matter of damages should be affirmed. In his opinion the trial judge expressed himself as follows: "The damages which the plaintiff claims to have suffered have not been sufficiently proved." We have examined the evidence and have also been unable to find proper proof thereof.

The appeals should be dismissed and the judgment appealed from

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.